SCOTT'S PREPARATIONS, INC., Appellant, *v.* V. VIVAUDOU, INC., Respondent.

First Department, January 16, 1931.

*Joseph Sterling* of counsel [*Gustave B. Garfield* with him on the brief], for the appellant.

*James F. Donnelly* of counsel [*Merwin Lewis* with him on the brief; *Olvany, Eisner & Donnelly*, attorneys], for the respondent.

MARTIN, J. The plaintiff seeks an accounting of moneys and merchandise received by the defendant in its trust capacity as sales representative and the sole and exclusive distributor of the products of the plaintiff and its corporate predecessor. These products were known as Mineralava Clay, Face Finish and Mineralava. The relationship between the parties was created by an agreement made between the defendant and the plaintiff's predecessor, Scott's Preparations, Inc., a New York corporation, on May 5, 1921, and was continued by a further written agreement between the plaintiff and defendant dated December 30, 1922.

The complaint contains five causes of action. The answer contains three defenses. The first alleges that the plaintiff had not obtained a certificate to do business within the State of New York at the time of the execution of the respective contracts and, therefore, could not sue within the State. As a second and partial defense to the first, second and third causes of action, it was alleged that prior to the commencement of the action the plaintiff undertook the collection and assumed full charge of credit accounts receivable, relieved the defendant from all responsibility in connection therewith, and waived any right to the return of any commissions paid to the defendant and released and discharged the defendant from any further claim thereon. The third defense, which relates only to the first, second, fourth and fifth causes of action, alleges that prior to the commencement of the action the plaintiff was fully paid, satisfied and discharged and that all accounts between the parties were adjusted.

With reference to the first defense, the court held that it must be disregarded as not being well founded in law. That ruling appears to be correct and is not questioned on this appeal.

The trial justice sustained the second and third defenses and, accordingly, dismissed the complaint, holding in effect that defendant had proved both payment and a release. The court reached the conclusion that the plaintiff was not entitled to an accounting on any of the items set forth in the complaint arising before or after this adjustment upon the ground that there had been a release and payment in full.

About $1,800,000 worth of merchandise passed between the parties during the first two years of business and, by means of extensive advertising, the public's purchases of the products of this company increased in a remarkable manner.

In June, 1923, the plaintiff owed the defendant approximately $100,000 in commissions, and about $40,000 in addition thereto. Both parties were insisting on an adjustment. The plaintiff had no available cash at the time but desired to adjust the entire matter. The defendant proposed that plaintiff sell to it all goods belonging to plaintiff in the possession of the defendant, and also all the goods in the possession of the plaintiff. Defendant also agreed to give the plaintiff two trade acceptances amounting to $125,000 for goods to be manufactured. The total amounted to the sum of $399,360. This amount, plaintiff says, represents goods actually sold and delivered or to be manufactured and delivered. The plaintiff was compelled, out of this $399,360, to pay back $205,838.33 to the defendant and to pay a claim against the plaintiff amounting to $22,524.15, and the rest of the money went to the plaintiff to put it in a position to conduct its business.

The agreement for the payment of this money is in evidence and clearly shows that it was intended as a means of paying the defendant what was due it and at the same time providing for the purchase of a large quantity of goods from the plaintiff, thereby putting it in funds to manufacture additional goods.

Under the original agreement between the parties, the plaintiff delivered its goods to the defendant as agent and the defendant guaranteed the accounts. It is now claimed that when the payment of $399,360 was made it was not only for goods sold but was a complete payment and settlement of everything that was due and owing between the parties and that there was a release — an oral release of defendant given by the plaintiff.

The plaintiff denies there was a release and asserts that at that time there was over a quarter of a million dollars of uncollected or uncollectible accounts outstanding which the defendant had guaranteed and for which the defendant was liable to the plaintiff.

The defendant's witness MacBride testified as follows: " Q. As they stood in June, 1923, ran a quarter of a million and over, is that right? A. I would estimate it at that, yes, sir. Q. What would you estimate the 1923 receivables included; were they less in June, 1923? A. Probably another $150,000. By the Court: Q. $150,000? A. The outstanding receivables of the first five months of 1923. Q. Was another $150,000? A. Yes, sir."

Ralph H. Aronson, also a defendant's witness, gave the following testimony: " Q. Do you want us to understand that this type-written endorsement on the back of this check, ' In full payment of all outstanding indebtedness June 1st, less counterclaims of record to date,' was in your opinion all the documentary evidence that you wanted that you had been released from guarantees on accounts amounting up to $400,000? A. Yes. Q. And you regarded that as a prudent and proper way to evidence a release of a guarantee? A. Absolutely."

If the testimony of Mr. MacBride is correct, and it would seem that the defendant relies almost entirely upon that testimony to establish its defenses, when this settlement of commissions was made the plaintiff not only paid commissions on all outstanding accounts which had not been collected and which had been guaranteed by the defendant, but in addition plaintiff released the defendant from its guaranty of payment of these same accounts.

To sustain such a contention, the evidence should be more con-vincing than that offered by the defendant. The oral testimony, as well as the documentary evidence, appears to disprove any such arrangement. Subsequent correspondence with reference to these guaranteed accounts indicates that the defendant continued to interest itself as before June of 1923 in their collection and settle-ment. This is clearly shown by the testimony of Mr. MacBride, although he said he thought he made a mistake in signing himself as treasurer to the letters written to the plaintiff seeking to work out a plan which would prove successful and advantageous to both parties in collecting the guaranteed accounts.

The plaintiff says it is unreasonable to suppose that it released more than a quarter of a million dollars of guaranteed accounts without one cent of consideration except the fact that the defendant purchased some goods from plaintiff at regular prices, which goods were delivered to defendant, and in addition paid commissions on the released accounts.

The defendant says that the plaintiff was financially embarrassed, on the verge of bankruptcy, and that to save it the defendant pur-chased $399,360 worth of goods and paid that amount on June 19, 1923, to the plaintiff, taking back $205,939.33 that was owed to it.

The plaintiff points to the fact that there is not a writing any-

where to show a release of these accounts or a settlement of any kind except the check which was given at that time, made out by defendant's officer, which check the plaintiff contends expressly reserves the guaranteed accounts which had not been paid.

Exhibit " C," a check for the sum of $205,838.33, prepared by the defendant, has indorsed thereon the words: " In full payment of all outstanding indebtedness June first less counterclaims of record to date." One thing is certain, the check excepts something. It excepts counterclaims of record to date, showing that everything between the parties had not been paid and settled. Testimony was offered to show the meaning of the words " less counterclaims of record to date."

The defendant says that statement on the check was intended to reserve its claims against the plaintiff. But it does not appear that it could have had any substantial claims against the plaintiff after the plaintiff paid its commissions.

Mr. MacBride testified upon this subject as follows: " Q. Was there any discussion about that endorsement on that check that day? A. None that I know of. Q. Was there a discussion as to its terms before it was actually made up? A. Not that I know of. Q. I mean as to the settlement of the indebtedness endorsed on it? A. Any discussion as to the endorsement? Q. Yes. A. Nothing at all. When this check was handed to them, a statement accompanied it, showing the detail of the accounts that it was to cover. * * * Q. A statement was prepared, was it? A. Yes. Q. And delivered? A. Yes, sir."

The statement referred to is plaintiff's Exhibit 11, which is an itemized statement showing what the $399,360 was for. This statement is in part, as follows:

| " QUANTITY DESCRIPTION | |
|---|---|
| " 2,000 gross Scott's Mineralava Beauty Clay in bottles, at $114.00 gr | $296,400.00 |
| " 800 gross Scott's Mineralava Face Finish in bottles, at $91.20 gr | 72,960.00 |
| " 1,000 gross Scott's Mineralava Beauty Clay 50c tubes, at $30.00 gr | 30,000.00 |
| | $399,360.00 |

" Terms: By credit $205,838.33 upon acceptance by you of this order.

" Balance to be paid as follows:

" $68,521.67 by cash, June 19th, 1923

" $75,000.00 by cash, not later than July 20, 1925

" $50,000.00 by cash, "   "   " August 20, 1923."

It is significant that nowhere in this statement is anything whatever said about the guaranteed accounts. We think it is clear that defendant intended to reserve to plaintiff any counterclaim it had against defendant. This check surely intended to except something for the benefit of plaintiff, not the defendant.

Assuming the argument of the defendant to be correct that there was a settlement on June 19, 1923, nevertheless there are several matters which arose subsequent to June 19, 1923, which would entitle the plaintiff to an accounting.

The release which the defendant sets up is stated to be an oral release. The plaintiff contends that the documentary evidence alone proved beyond question that no such release was ever made and that in addition it was proved by overwhelming oral testimony that the plaintiff never released the defendant or accepted a settlement of any kind with reference to these guaranteed accounts, and also points to the testimony and conduct of defendant's officers to establish that fact. In an examination before trial one of the defendant's witnesses was asked: " Q. Did you know at the time whether the accounts for the previous six months were collectible or were not collectible? A. It would be impossible to know that definitely at that time. * * * Q. So you could not have adjusted that at that time, could you? A. Not in full."

It is there admitted that these guaranteed accounts could not have been fully adjusted at the time it was alleged that there was an adjustment, release of the defendant and a settlement in full. The witness Karr testified that the counterclaims referred to on the back of the check were the guaranteed accounts now being sued for by the plaintiff.

The plaintiff points to the important fact that the agreement of June 19, 1923, continued the then existing agency and provided for the sale of merchandise pursuant to the joint venture referred to in the complaint. It is especially important to note that this agreement *confirms and continues the contract of December 30, 1922,* which contract expressly provided that at the close of each fiscal year, to wit, December thirty-first, the defendant should pay the plaintiff on its guaranties of uncollectible accounts on the basis therein set forth. If these guaranteed accounts were released it is remarkable that the agreement with reference thereto should be expressly confirmed and continued in all respects by the writing of June 19, 1923. The express wording of the guaranty which was reaffirmed in the writing of June 19, 1923, is as follows: " It is understood, however, that the party of the second part shall be responsible for the credit accounts that it opens, and shall guarantee the payment for all sales made on credit."

As proof of the adjustment, the defendant claims that after the execution of the agreement of June 19, 1923, all of the books of the defendant showing outstanding accounts were sent to the plaintiff to collect same, indicating that all the accounts were turned over to the plaintiff after the settlement. The plaintiff says that the books of the defendant showing the accounts which had been guaranteed were not delivered to it shortly after the alleged adjustment of June 19, 1923, and that the documentary evidence conclusively shows that the customers' ledgers so referred to were not sent over until August 27, 1923, two months after the supposed conversation, which the witness MacBride says was had with reference to these books, MacBride having stated that these books had been sent over within a week or ten days after June 19, 1923. Mrs. Holly, the defendant's bookkeeper, appears to have gone to the plaintiff's office at the time the books and a Burroughs bookkeeping machine were sent over, which was on August 28, 1923.

To support its contention the plaintiff points to the fact that no change in procedure took place in handling the guaranteed accounts and that the same routine was followed after June 19, 1923, that had been followed before that date, and continued until the plaintiff complained that defendant was not making any attempt to collect these accounts; that the officers of the defendant told officers of the plaintiff that the reason they could not do so was that they were not in a position to press the customers for payment, because the customers had an agreement with them that if any goods did not sell they could return them to defendant and the defendant would supply other goods, which the customers could offer for sale.

The conduct on the part of the defendant, through its officers, subsequent to the alleged settlement of June 19, 1923, clearly negatives the contention made by the defendant that there was a release, payment in full and a complete settlement and adjustment at that time. In addition, as already pointed out, this check which it is said contains language indicating a complete settlement, was prepared by the defendant's officers and in our opinion leads to the opposite conclusion, for it expressly reserves the counterclaims of record.

We are of the opinion that the evidence established that the adjustment of June 19, 1923, was not intended to release the guaranteed accounts for which the defendant was liable at that or any subsequent time and was not a payment in full. The plaintiff points out that to uphold defendant's contention would lead to the conclusion that the plaintiff was releasing several hundred thousand

dollars of guaranteed accounts in order to arrive at an adjustment of the commissions of the parties and pay the commissions claimed by the defendant.

With reference to a third item, the remaining free goods that were in the possession of the defendant which had been delivered to the buyer for advertising purposes to be given away or returned, the court characterized it as of very little importance and not sufficient to order an extensive accounting, stating that these free goods were in the warehouse of the defendant and that the defendant would be glad to return them as they were occupying space which could be used more advantageously.

The court, defendant's counsel and the officers of the defendant appear to have all taken different views on the question of the "free goods." As above stated, the court decided the question upon the ground that the matter was of little importance and that the free goods were taking up space in the defendant's warehouse. The defendant's officers, despite a clause in the contract to the contrary, contended that the defendant owned the so-called "free goods" that had not been distributed. When the attention of counsel for defendant was called to his statement and the testimony of his witnesses, the following colloquy occurred: " Q. Do you remember Mr. Donnelly stating to the Court that these free goods were ready at any time awaiting plaintiff taking them away, do you remember him stating that to the Court? "

Mr. Donnelly interrupted with the following statement: " I object to that. What I had in mind and what I intended to state was such part as they could show was theirs. We always made the claim and make it now that part of those free goods were ours under the arrangement of the purchase of merchandise."

There was an assertion of absolute title in defendant to a part of these goods. That assertion was not sustained by the court. The question was decided on a very different theory and one that cannot be sustained by the evidence.

Mr. Aronson testified on an examination before trial on this subject as follows: " Q. And pursuant to that negotiation, did * * * Scott deliver to you certain merchandise to be delivered free? A. Yes. Q. Was that in December, 1923? A. I don't know. Q. Can't you give me approximately the date? A. It is difficult to do that, because the goods came in right along, and I don't know just when it was. That is, they didn't bundle the goods all up and ship them all in, they came in over a period, and I don't know when it began and when it ended, I know we got the merchandise. Q. Was the amount of that merchandise about $182,000? A. I

think so. * * * Q. After you discontinued giving merchandise free in March, 1924, what did you do with the balance of the $182,000 of merchandise? A. We have it. Q. You still have it? A. Yes. * * * Q. Has Vivaudou ever paid since for the balance of $182,000 of merchandise? A. No, there is no reason why we should, as that was given to them to be dispensed as free goods."

The contract with reference to these free goods provides: " You will supply us with two (2) dozen units of each kind per gross of the foregoing order free of charge for the purpose of taking care of Free Deals which we may offer either in goods or advertising. If after we have sold all of the goods called for by the above order there still remains on hand any free merchandise we will return same to you."

It is clear under this contract that the goods not given away do not belong to the defendant and do belong to the plaintiff, and must be paid for or returned.

The plaintiff says that the free goods are valued at $182,000; that irrespective of their value the plaintiff is entitled to their return, or an accounting therefor, especially in view of the fact that the defendant's witnesses testified that they had discontinued the practice of giving away these goods and had so notified their salesmen and that these goods are now in the possession of the defendant.

It is evident, therefore, from a consideration of the facts that this action cannot be disposed of in the manner adopted by the court.

In view of that conclusion, it is unnecessary to consider the many other points raised by the parties upon this appeal. The plaintiff being entitled to an accounting with reference to the guaranteed accounts, and the free goods as well as any other items accruing subsequent to June 19, 1923, such accounting should be ordered.

The judgment should, therefore, be reversed, with costs, and an interlocutory judgment directed to be entered in favor of the plaintiff, with costs, for an accounting before a referee to be appointed by the order.

Dowling, P. J., and Merrell, J., concur.

Sherman, J. (concurring). The evidence introduced upon the issues, created by the denials in the answer of the averments of the first, second, fourth and fifth causes of action set forth in the amended complaint, shows that plaintiff was entitled to a full accounting — unless the proof as to the separate affirmative defenses

was adequate to defeat that right. The first separate defense was abandoned. The second separate defense was pleaded only as a "partial" defense, while the third separate defense was a plea of payment, discharge and release. The proof as to the third separate defense falls short of substantiation. Therefore, the judgment dismissing the complaint on the merits cannot be sustained.

Plaintiff is entitled to an interlocutory judgment of accounting. Upon the accounting, evidence may be taken which will show whether or not the transactions of June 19, 1923, amounted to a settlement between the parties as of June 1, 1923. The meaning to be given to the indorsement upon the check for $205,838.33, viz.: "In full payment of all outstanding indebtedness June first less counterclaims of record to date," must be determined by the referee in the light of the evidence to be adduced. Upon the present record, it is virtually impossible to arrive at a satisfactory conclusion as to its import.

Nor is it clear what, if any, " counterclaims of record " existed, or whether such as existed were intended to survive the arrangement then entered into. Likewise whether or not defendant was released from its obligation, as guarantor of the unpaid accounts, is a question of fact which, with many others, must be resolved upon the accounting. We cannot now determine them.

The findings of fact and conclusions of law made by the Special Term, in so far as they are in conflict with these views, should be reversed and new findings appropriate to sustain an interlocutory judgment of accounting should be made. To the foregoing extent, I concur with Mr. Justice MARTIN.

O'MALLEY, J., concurs.

Judgment reversed, with costs, and interlocutory judgment directed to be entered in favor of plaintiff, with costs, for an accounting before a referee to be appointed by the order. Settle order on notice. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.